IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT COURT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD DAVET, | ) | CASE NO. 1:03-CV-1623 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN M. MANOS |
| | ) | |
| vs. | ) | **DEFENDANT CITY OF CLEVELAND AND** |
| | ) | **ROBERT VILKAS' MOTION FOR SUMMARY** |
| CITY OF CLEVELAND, *et al.*, | ) | **JUDGMENT AS TO PLAINTIFF DAVET'S CLAIMS** |
| | ) | |
| Defendants. | ) | |

Defendants City of Cleveland and Robert Vilkas respectfully move this Court for summary judgment in this matter under Rule 56 of the Federal Rules of Civil Procedure.  The reasons for this motion are fully provided in the attached Memorandum in Support.

Respectfully submitted,

SUBODH CHANDRA (0069233)
Director of Law

By:   /s/ Ronald J. H. O'Leary
RONALD J. H. O'LEARY (0068207)
Chief Assistant Director of Law for Code Enforcement
601 Lakeside Avenue- Suite 15
Cleveland, Ohio 44114
(216) 664-3572
(216) 420-8291 (fax)
roleary@city.cleveland.oh.us

Attorneys for Defendants

**CERTIFICATE OF COMPLIANCE WITH FED. R. CIV. P. 7.1(f)**

I certify that this matter is assigned to the standard track and that the attached memorandum adheres to the 20-page limitation set forth in Fed. R. Civ. P. 7.1(f).

/s/ Ronald J. H. O'Leary
RONALD J. H. O'LEARY
Attorney for Defendants

**CERTIFICATE OF SERVICE**

I certify that a copy of the above Motion for Summary Judgment and attached Memorandum in Support of Motion for Summary Judgment was filed electronically on September 23, 2003.  Notice of this filing will be sent to all parties by operation of the Court's electronic-filing system.  A copy also was sent to Richard Davet on September 22, 2003 by regular U.S. mail to:

P.O. Box 10092
Cleveland, Ohio 44110

and

24800 Community Drive
Beachwood, Ohio 44122

/s/ Ronald J. H. O'Leary
RONALD J. H. O'LEARY
Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT COURT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD DAVET, | ) | CASE NO. 1:03-CV-1623 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN M. MANOS |
| | ) | |
| vs. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **MOTION FOR SUMMARY JUDGMENT** |
| CITY OF CLEVELAND, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants City of Cleveland and Robert Vilkas respectfully submit this memorandum in support of their Motion for Summary Judgment.

TABLE OF AUTHORITIES............................................................................................................2
I.      STATEMENT OF ISSUES PRESENTED....................................................................3
II.     STATEMENT OF UNDISPUTED FACTS....................................................................5
III.    LAW AND ARGUMENT.................................................................................................8
        A.      Federal Constitutional Issues............................................................................8
                1.      Due Process..............................................................................................8
                        a.      Procedural Due Process................................................................8
                        b.      Substantive Due Process..............................................................9
                2.      Equal Protection.....................................................................................10
                3.      Taking Without Just Compensation.......................................................10
                4.      Vilkas' Qualified Immunity....................................................................11
        B.      State Constitutional Issues..............................................................................13
                1.      No cause of action for violation of the Ohio Constitution....................13
                2.      Defenses.................................................................................................14
                        a.      Immunity Under R.C. Chap. 2744.............................................14
                        b.      Failure To Exhaust Administrative Appeals..............................17
        C.      Injunctive Relief...............................................................................................18
                1.      *Res Judicata*.........................................................................................18
                2.      Unclean Hands.......................................................................................19
IV.     CONCLUSION..............................................................................................................20

## TABLE OF AUTHORITIES

<u>CASES</u>

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ................................................................12

*Big Lots Stores v. Jaredco, Inc.*, 182 F.Supp.2d 644, 652 (S.D. Ohio 2002) .....................19

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).........13

*BP Communications Alaska, Inc. v. Central Collection Agency*, 136 Ohio App.3d 807, 813 (8th Dist. 2000) .................18

*Bram v. City of Cleveland*, 97 Ohio App.3d 719, 720-721 (8th Dist. 1993) ....................15, 16

*Burchett v. Kiefer*, 310 F.3d 937, 941 (6th Cir. 2002).............................................................8

*Cater v. City of Cleveland*, 83 Ohio St.3d 24, 28 (1998) ......................................................15

*Chalker v. Howland Township Board of Trustees,* 74 Ohio Misc.2d 5 (1995) .................13, 14

*City of Cleveland v. Sun Oil Co.,* 62 Ohio App.3d 732, 736 (1989).......................................18

*City of Cleveland v. W.E. Davis Co.,* No. 69915, 1996 WL 403337, at *6 (8th Dist. July 18, 1996) .................11

*Cleveland v. Wescon Constr. Corp.,* No. 57405, 1990 WL 121301 (8th Dist. Aug. 23, 1990)...................15, 16

*Cleversy v. Perry Township,* No. 1:91CV0657, 1991 WL 328021, at *4 (N.D. Ohio 1991) .........9

*Goad v. Cuyahoga Bd. Of Comm.,* 79 Ohio App.3d 521, 524 (8th Dist. 1992).....................14

*Haag v. Cuyahoga County*, 619 F.Supp. 262, 278 (N.D. Ohio 1985).....................................9

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) .............................................................11, 12

*Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994)...................................................8

*Hopson v. DaimlerChrysler Corp.* 306 F.3d 427, 432 (6th Cir. 2002)....................................8

*Hunter v. Bryant*, 502 U.S. 224, 228 (1991) .........................................................................12

*Jones v. Village of Chagrin Falls*, 77 Ohio St.3d 456, 462 (1997).......................................17

*Kearney & Trecker Corp. v. Cincinnati Milacron Inc.,* 562 F.2d 365, 371 (6th Cir. 1977)......19

*Malley v. Briggs,* 475 U.S. 335, 341 (1986)...........................................................................12

*McCloud v. Testa,* 97 F.3d 1536, 1541 (6th Cir. 1996)...........................................................12

*Noernberg v. City of Brook Park*, 63 Ohio St.2d 26, 29 (1980)............................................17

*Pierce v. Apple Valley, Inc.,* 597 F.Supp.1480 (S.D. Ohio 1984) .........................................19

*Pray v. City of Sandusky,* 49 F.3d 1154, 1158 (6th Cir. 1995) .............................................12

*Pritz v. Messer*, 112 Ohio St. 628, 631 (1925) .....................................................................10

*Provens v. Stark County Bd. of Mental Retardation & Developmental Disabilities,* 64 Ohio St.3d 252, 253 (1992)....13, 14

*Village of Hudson v. Albrecht, Inc.,* 9 Ohio St.3d 69, 72 (1984) ...........................................10

*White v. Toledo*, 217 F.Supp.2d 838, 841 (N.D. Ohio 2002) ................................................10

<u>CONSTITUTIONAL PROVISIONS, STATUTES, AND ORDINANCES</u>

U.S. Const. amend. V...............................................................................................................10

42 U.S.C. § 1983....................................................................................................8, 9, 11, 14

Ohio Const. art. I, § 19............................................................................................................10

R.C. § 715.26 ...........................................................................................................................11

R.C. § 2744.01 ..................................................................................................................14, 15

R.C. § 2744.02 .........................................................................................................4, 14, 15, 16

R.C. § 2744.03 .........................................................................................................4, 15, 16, 17

R.C. § 2744.09 ....................................................................................................................15, 16

R.C. Chap. 2744 ..............................................................................................................4, 14, 15

C.C.O. § 3103.09 .........................................................................................................11, 13, 16

C.C.O. § 3103.20 ......................................................................................................................5

<u>OTHER</u>

Sharon N. Humble, Annotation, *Implied Cause of Action for Damages for Violation of Provisions of State Constitutions,*
75 A.L.R.5th 619 (2000) ........................................................................................................13

I.      STATEMENT OF ISSUES PRESENTED

1.      **Procedural Due Process Under Federal Constitution-** Due process requires notice to the owner prior to the deprivation and an opportunity for a predeprivation hearing.  Davet received the condemnation notice before the City partially demolished his building.  He appealed the condemnation notice to the Cleveland Board of Building Standards and had TRO motion hearings before the City partially demolished his building.  Since Davet had notice and hearings before the City partially demolished his building, are the City and Vilkas entitled to summary judgment on Davet's procedural due-process claim?

2.      **Substantive Due Process-** To state a claim for a substantive due-process violation, a plaintiff must show that there is aggravated conduct by a state actor.  A defendant's conduct must offend the standards of decency, demonstrate callous indifference, rise to the level of reckless conduct, employ excessive force, and shock the conscience.  The City and Vilkas inspected Davet's property and found that there was a roof breach and that the front wall had pulled away from the side walls.  The City issued a condemnation notice to Davet before partially demolishing Davet's building.  As a matter of law, did these actions reach a level of behavior required to support Davet's substantive due-process claim?

3.      **Equal Protection-** A plaintiff who brings an action under the equal-protection clause must prove invidious discrimination based upon his membership in a protected class.  Davet has not alleged that he is a member of a protected class or that he faced discrimination because he is a member of a protected class.  Having failed to make these allegations, must Davet's equal-protection claim fail?

4.      **Property Seizure/ Taking Without Just Compensation-** The government is only required to compensate a property owner for taking property for public use under its eminent-domain power.  Demolishing property under the police power—as opposed to "taking" by eminent domain—does not require compensation to the property owner.  The City and Vilkas' inspection, condemnation, and partial demolition of Davet's property—given its condition—were exercise of police powers.  As such, does Davet have a right to compensation for these actions?

5.      **Vilkas' Qualified Immunity-** Building officials performing discretionary functions have qualified immunity if a reasonable building official in the defendant's position would believe the conduct was lawful under clearly established law and the information the official possessed at the time.  Vilkas' actions taken as part of the inspection, condemnation, and partial demolition of Davet's building were done under procedures set out in the Cleveland Codified Ordinances.

Because Vilkas was following the legal procedures that authorized the actions he took, is he entitled to qualified immunity?

6.     **No Cause of Action for Violation of Ohio Constitution**- Ohio courts—including the Ohio Supreme Court—have consistently held that Ohio does not recognize an implied cause of action for a violation of the Ohio Constitution. Davet alleges that the City and Vilkas violated his constitutional rights under the Ohio Constitution.  Are Defendants entitled to summary judgment on Davet's implied causes of action under the Ohio Constitution?

7.     **The City's Immunity Under R.C. Chap. 2744**- R.C. § 2744.02 provides that municipalities are not liable in a civil action for injury, death, or loss to persons or property caused by an act or omission of the municipality in connection with a governmental function.  Inspecting, condemning, and demolishing buildings are governmental functions.  Since all Davet's allegations center around the City inspecting, condemning, and partially demolishing his building, is the City immune from suit under R.C. Chap. 2744?

8.     **Vilkas' Immunity Under R.C. Chap. 2744**- A public employee is immune from liability unless one of the exceptions in R.C. § 2744.03(A)(6) applies.  Although Davet conclusorily alleges that Vilkas acted outside the scope of his employment and with malicious purpose, the evidence shows that all Vilkas' actions were taken as part of the inspection and demolition procedure.  Given that the evidence fails to support a finding that any of the exceptions to immunity applies, is Vilkas entitled to summary judgment because he is immune from Davet's claims?

9.     **Failure To Exhaust Administrative Remedies-** A party must exhaust administrative appeals before seeking judicial relief for alleged injuries.  Davet failed to exhaust his administrative appeals because he did not appeal the adverse decision from the Cleveland Board of Building Standards to the Court of Common Pleas.  Since Davet failed to exhaust his administrative appeals, are the City and Vilkas entitled to summary judgment?

10.    *Res Judicata*- Failure to appeal an adverse decision from an administrative board to the court of common pleas, whether the decision was erroneous or not, makes the decision *res judicata* to identical future applications.  Davet received an adverse decision from the Cleveland Board of Building Standards and did not appeal the decision.  Is the decision *res judicata* to the issues that were before BBS?

11.    **Unclean Hands-** Unclean hands by a plaintiff will bar equitable relief to that plaintiff if he is tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper the defendant's behavior

might have been.  Davet seeks to enjoin further demolition of his building, yet he has failed to make any repairs to the building since it was condemned.  Does his failure to correct the severe violations that lead to the condemnation amount to unclean hands that bars his request for injunctive relief?

## II.      STATEMENT OF UNDISPUTED FACTS

Richard Davet owns the property at 810-12 East 152nd Street, Cleveland, Ohio ("the Property").[1]  On March 6, 2003, Cleveland inspectors inspected a building at the Property and found Building Code violations.  Damian Borkowski—the City's Demolition Bureau Manager[2]—and Ramish Patel—a structural engineer employed by the City— were present at the inspection.[3]  Robert Vilkas—the City's Chief Building Official[4]—went to the Property a day after Patel and Borkowski were at the Property.[5]

Among the conditions at the Property was a partially collapsed roof and large cracks on both sides of the opposing sidewalls that were holding the front face of the building to the rest of the structure.[6]  If this front wall had fallen, then it would have gone across the sidewalk and into the street.[7]  The Property is near Collinwood High School.[8]  Based on these violations, the City issued a condemnation notice to Davet.[9]

Davet found a copy of the condemnation notice taped to the front of the building at the Property on March 10, 2003[10] and filed an appeal with the Board of Building Standards ("BBS") the same day.[11]  Under Cleveland Codified Ordinance ("C.C.O.") 3103.20(e)(3),[12] filing this appeal stayed any administrative action to implement this Notice. Because there was a danger that the front wall could fall into East 152nd Street, the City filed a certification with BBS on March 12, 2003 to lift the automatic stay.[13]

---

[1] Am. Compl. at ¶ 1.
[2] Board of Building Standards ("BBS") Tr. dated April 23, 2003 at 13 attached as Ex. 1.
[3] BBS Tr. dated May 7, 2003 at 5-6 attached as Ex. 2.
[4] BBS Tr. dated April 23, 2003 at 13 attached as Ex. 1.
[5] *Id.* at 15.
[6] *Id.* at 13.
[7] *Id.* at 14.
[8] *Id.*
[9] Condemnation Notice attached as Ex. 3.
[10] BBS Tr. dated April 23, 2003 at 7 attached as Ex. 1.
[11] BBS Appeal attached as Ex. 4.
[12] Copy attached as Appendix A.
[13] Certification attached as Ex. 5.

Davet filed this case on March 12, 2003.[14]  The court granted a TRO for one day and set the preliminary-injunction hearing for March 13, 2003.[15]  Davet withdrew his request for preliminary-injunction hearing on March 13, 2003, and the TRO was canceled.[16]  The City partially demolished the front of the building on March 14, 2003.[17]  This demolition removed the immediate danger that the wall would collapse.

On April 23, 2003, BBS heard Davet's appeal.  At that hearing, Davet admitted that he knew the roof had collapsed in September or October 2002.[18]  He also admitted that from March 10, 2003 through April 23, 2003, he had not hired a structural engineer,[19] an architect,[20] or a contractor[21] to rehabilitate the building at the Property.  Two weeks later—when BBS reconvened its hearing on May 7, 2003—Davet still had not hired an engineer, architect, or contractor.[22]

BBS adopted a resolution on May 7, 2003 that upheld the condemnation notice.[23]  Before adopting its resolution, the BBS members discussed the conditions at the Property.  Halim Saab—the structural engineer on BBS—told other board members "the City had the right concern with the partial collapse of the roof.  The roof plays a big part in the integrity of the sidewalls . . . ."[24]  He went on to say, "I am surprised that the owner hasn't made any attempt to hire anybody professional to look at the conditions."[25]

After BBS adopted its resolution, the City continued to have contact with Davet about bringing the building into compliance with the Building Code.  In a letter to Davet's attorney dated May 8, 2003—the day after the BBS resolution was adopted—the City's attorney outlined the steps that Davet needed to take to avoid further demolition.[26]  These steps

---

[14] Case CV-03-496090 Docket attached as Ex. 6.

[15] *Id.*

[16] *Id.*

[17] Damian Borkowski affidavit attached as Ex. 7.

[18] BBS Tr. dated April 23, 2003 at 10-11 attached as Ex. 1.

[19] *Id.* at 11-12.

[20] *Id.*

[21] *Id.* at 13.

[22] BBS Tr. dated May 7, 2003 at 14-15.

[23] BBS Resolution for Docket A-35-03 attached as Ex. 8.

[24] BBS Tr. dated April 23, 2003 at 24 attached as Ex. 1.

[25] *Id.* at 25.

[26] Letter from O'Leary to Gordon dated May 8, 2003 attached as Ex. 9.

were as follows:

- Davet must hire a registered architect or structural engineer within two weeks from the date of the letter;
- The architect or engineer had to give Vilkas a commitment to work on Davet's property;
- Architectural drawings had to be prepared and permit applications had to be submitted; and,
- Contractors had to complete the work in a timely fashion after the permits were issued.

Davet faxed Vilkas a letter on May 21, 2003 saying that he had a proposal for the work at the Property.[27]  This proposal was a letter from Baywest Construction Group, Inc. dated May 21, 2003.[28]  On May 27, 2003, the City's attorney—Ronald J. H. O'Leary—sent Davet's attorney—Loren Gordon— a letter responding to Baywest's proposal.[29] The City found Baywest's proposal inadequate for a number of reasons.  First, there was no indication that Davet had accepted the proposal.  Second, there was no timeline for the work to be completed.  Third, the proposal did not address the overall condemnation.  It only dealt with stabilizing the structure.  For these reasons, the work proposal was not sufficient.

On May 30, 2003, Gordon sent O'Leary a letter with an attachment from Baywest.[30]  This proposal was not acceptable to the City because it indicated that the approvals had not been received from Davet.[31]  There were no timelines listed in this proposal.[32]  On June 4, 2003, O'Leary sent Gordon a letter saying that the City would resume demolition on June 9, 2003.[33]  A follow-up letter later that day stated that Borkowski would meet the demolition contractors at the Property at 9:00 a.m. on June 5, 2003.[34]  This letter said that Davet was welcome to accompany Borkowski and the demolition contractors for this inspection.

On June 6, 2003, Davet filed another TRO motion asking that the court restrain the City from continuing the demolition.[35]  The court denied the motion because Davet failed to produce clear and convincing evidence that he was likely to be successful on the merits of this case.[36]

---

[27] Letter from Davet to Vilkas dated May 21, 2003 attached as Ex. 10.

[28] Baywest letter dated May 21, 2003 attached as Ex. 11.

[29] Letter from O'Leary to Gordon dated May 27, 2003 attached as Ex. 12.

[30] Letter from Gordon to O'Leary dated May 30, 2003 attached as Ex. 13.

[31] Letter from O'Leary to Gordon dated June 3, 2003 attached as Ex. 14.

[32] *Id.*

[33] Letter from O'Leary to Gordon dated June 4, 2003 attached as Ex. 15.

[34] Letter from O'Leary to Gordon dated June 4, 2003 attached as Ex. 16.

[35] Case CV-03-496090 Docket attached as Ex. 6.

[36] *Id.*

The City razed the front portion of the building back to the firewall in the center of the building on June 11, 2003.[37]  At no time in the three months from when the condemnation notice was issued on March 7, 2003—or in the nine months since the roof collapsed—did Davet apply for or obtain permits to correct any of the code violations.[38]

## III.    LAW AND ARGUMENT

A district court must grant summary judgment where there are no genuine issues as to any material fact, the moving party is entitled to judgment as a matter of law, it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence most strongly in favor of the party opposing the motion, that conclusion is adverse to that party.[39]

## A.    Federal Constitutional Issues

Davet raises claims for violation of his rights to due process, equal protection, and taking without compensation under the United States Constitution.  For the reasons set out below, each of his claims fails.

### 1.    Due Process

#### a.    Procedural Due Process

Generally, procedural due process "includes notice to the owner prior to the deprivation and an opportunity for a predeprivation hearing."[40]  Only those deprivations that are carried out without due process are actionable under 42 U.S.C. § 1983.[41]

In *Harris v. City of Akron,* a building owner claimed a procedural due-process violation regarding a building Akron demolished.  The trial court granted summary judgment for Akron because Harris failed to plead and prove to the court that there was no adequate state post-deprivation remedy.  The decision was affirmed on appeal.

In this case, Davet had notice.  He admitted that he found the condemnation notice posted on the building on March 10, 2003.[42]  He also had multiple opportunities for predeprivation hearing.  The first was on March 12, 2003

---

[37] Damian Borkowski affidavit attached as Ex. 7.

[38] Antoinette Allen affidavit attached as Ex. 17.

[39] *Burchett v. Kiefer,* 310 F.3d 937, 941 (6th Cir. 2002); *Hopson v. DaimlerChrysler Corp.* 306 F.3d 427, 432 (6th Cir. 2002).

[40] *Harris v. City of Akron,* 20 F.3d 1396, 1401 (6th Cir. 1994).

[41] *Id.*

[42] BBS Tr. dated April 23, 2003 at 7 attached as Ex. 1.

before Judge Mary J. Boyle.[43] This was before the first partial demolition on March 14, 2003. There were two BBS hearings—on April 27, 2003[44] and May 7, 2003.[45] Finally, there was the TRO hearing before Judge Christopher Boyko on June 6, 2003. These last three hearings were before the second partial demolition on June 11, 2003. Since Davet had notice and opportunity for hearing, his claim under 42 U.S.C. § 1983 must fail. The City and Vilkas are entitled to summary judgment on this claim.

### b. Substantive Due Process

Davet claims in paragraphs 23 and 30 of the Amended Complaint that the City and Vilkas deprived him of his right to substantive due process under the federal constitution. To state a claim for a substantive due-process violation, a plaintiff must show that there is aggravated conduct by a state actor.[46] A defendant's conduct must offend the standards of decency, demonstrate callous indifference, rise to the level of reckless conduct, employ excessive force, or shock the conscience to rise to the level of a substantive due-process violation.[47] A plaintiff must show that the defendant's conduct reaches a "level of appalling behavior required to show a violation of substantive due process rights."[48]

The evidence in this case fails to support Davet's substantive due-process claim. The City and Vilkas performed a governmental function—inspecting Davet's property for safety and code compliance. Finding that there was a roof breach and a front wall that had pulled away from the side walls, the City and Vilkas condemned the building and issued a condemnation notice to Davet. Davet appealed the notice, received an adverse decision from BBS, and failed to appeal that decision. He filed two TRO motions. The City waited until after the first one expired to partially demolish the front wall, and the City waited until after the second TRO motion was denied to do the second-phase demolition.

The City and Vilkas' behavior was not, as a matter of law, "appalling". All the actions taken were done according to the guidelines provided in the Ohio Revised Code and the Cleveland Codified Ordinances. Under these circumstances, no reasonable person could find that their actions offended the standards of decency, demonstrated

---

[43] Case CV-03-496090 Docket attached as Ex. 6.
[44] BBS Tr. dated April 23, 2003 attached as Ex. 1.
[45] BBS Tr. dated May 7, 2003 attached as Ex. 2.
[46] *Haag v. Cuyahoga County*, 619 F.Supp. 262, 278 (N.D. Ohio 1985).
[47] *Id.*
[48] *Cleversy v. Perry Township*, No. 1:91CV0657, 1991 WL 328021, at *4 (N.D. Ohio 1991) (copy attached as Appendix B).

callous indifference, rose to the level of reckless conduct, employed excessive force, or shocked the conscience. For these reasons, Davet's substantive due-process claim must fail. This Court should grant summary judgment for the City and Vilkas.

2.        **Equal Protection**

Plaintiffs who bring actions under the equal-protection clause must prove invidious discrimination based on membership in a protected class.[49] Failure to allege this discrimination causes the claim to fail "at the inception."[50]

Paragraphs 25 and 31 of the Amended Complaint allege that the defendants deprived Davet of equal protection under the federal and state constitutions. Neither paragraph nor any other part of the Amended Complaint alleges that the City or Vilkas' actions were based on race or another suspect classification. Further, there is no allegation that Davet was treated differently than any other person similarly situated. Having failed to allege any facts that give rise to a claim for an equal-protection violation, Davet's claim must fail. This Court should grant summary judgment for the City and Vilkas.

3.        **Taking Without Just Compensation**

The United States Constitution[51] and the Ohio Constitution[52] prohibit taking private property for public use without just compensation. The right to use and enjoy private property is, however, subject to legitimate exercise of police power by local government.[53] As the Ohio Supreme Court stated, "[t]he right of the individual to use and enjoy his private property is not unbridled but is subject to the legitimate exercise of the local police power."[54] Earlier, the Ohio Supreme Court held that "[l]aws enacted in the proper exercise of the police power . . . even though they result in the impairment of the full use of the property by the owner . . . do not constitute a 'taking of private property' within the meaning of the constitutional requirements as to making compensation for the taking of property for public use and as to the deprivation of property without due process."[55]

Further, courts have recognized that demolition to enforce building codes is not a taking. In *City of Cleveland v.*

---

[49] *White v. Toledo*, 217 F.Supp.2d 838, 841 (N.D. Ohio 2002).
[50] *Id.*
[51] U.S. Const. amend. V.
[52] Ohio Const. art. I, § 19.
[53] *Village of Hudson v. Albrecht, Inc.*, 9 Ohio St.3d 69, 72 (1984).
[54] *Id.*
[55] *Pritz v. Messer*, 112 Ohio St. 628, 631 (1925).

*W.E. Davis Co.*, the owner of a condemned building brought a takings claim against Cleveland after Cleveland demolished the owner's building.[56]  Cleveland moved for summary judgment on the grounds that its inspection and demolition were exercises of police power that did not equate to being a taking.  The trial court granted the motion.  The court of appeals affirmed the decision holding that "[i]t is well settled that municipal ordinances enacted pursuant to R.C. 715.26 [providing for the inspection of buildings or other structures and for the removal and repair of insecure, unsafe, or structurally defective buildings or other structures] are a valid exercise of police power."[57]  C.C.O. § 3103.09 is a municipal ordinance enacted under R.C. § 715.26.  Under this ordinance, the City is permitted to demolish any unsafe structure in the City as a public nuisance if the owner fails to comply with the notice to repair, rehabilitate, or demolish the structure.[58]

Davet is not entitled to just compensation for the partial demolition of the building at the Property.  The City did not acquire the Property through eminent domain.  Furthermore, the City did not "take" the Property for a public use.  The condemned building at Davet's property was deemed to be a public nuisance under the C.C.O. § 3103.09.  The building was then demolished according to the procedures in the Building Code—ordinances that were properly enacted under the City's police powers.  Further, the building's demolition does not result in the full impairment of the use of the Property.  Defendants are entitled to summary judgment because the City complied with all ordinances regarding the building's demolition on March 14, 2003 and June 11, 2003.

4.    Vilkas' Qualified Immunity

A government official performing discretionary functions has qualified immunity if his conduct does not violate clearly established federal "statutory or constitutional rights of which a reasonable person would have known" at the time the action was taken.[59]  Officials who perform discretionary functions are generally entitled to qualified immunity from suit under 42 U.S.C. § 1983 where their conduct does not violate clearly established federal constitutional or statutory rights that a reasonable person would have known at the time the action was taken.[60]  The proper inquiry is not whether the claimed right existed in the abstract, but whether a reasonable official would have known that the challenged conduct

---

[56] *City of Cleveland v. W.E. Davis Co.,* No. 69915, 1996 WL 403337, at *6 (8th Dist. July 18, 1996) (copy attached as Appendix C).
[57] *Id.*
[58] C.C.O. § 3103.09(b) and (h) (copy attached as Appendix D).
[59] *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).
[60] *Id.*

violated that right.[61]

Building officials who perform discretionary functions are afforded qualified immunity so long as a reasonable building official in the defendant's position believed that the conduct was lawful in light of clearly established law and the information the building official possessed at the time.[62]  Whether a building official is entitled to qualified immunity is based on a test of objective reasonableness as determined "on a fact-specific, case-by-case" basis.[63]  A building official is immune if officials of reasonable competence could disagree on whether the conduct violated the claimant's rights.[64]

Qualified immunity applies to conduct that is reasonable even if mistaken.[65]  Moreover, qualified immunity should be granted unless the unlawfulness of the conduct is apparent in light of pre-existing law.[66]  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[67]

Qualified immunity is not lost merely by a generalized allegation of abstract constitutional rights because government officials must be reasonably able to anticipate when their conduct may give rise to individual liability for damages.[68]  For this reason, the constitutional or statutory right allegedly violated must have been "clearly established."[69] "[T]he ultimate burden of proof . . . is on the plaintiff, who must establish . . . [the defendant's] conduct violated a federal right so clearly established that any official in his position would have understood that he was under an affirmative duty to refrain from such conduct."[70]

The evidence in this case establishes that Vilkas conducted an inspection at the Property and determined that the conditions were serious enough to condemn the structure at the Property as a public nuisance.  The City issued a condemnation notice to Davet.  He appealed the condemnation notice, and BBS upheld the condemnation.  Davet did not appeal the BBS decision.  The building at the Property was partially demolished under C.C.O. § 3103.09 on March 14, 2003 and June 11, 2003.

---

[61] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).
[62] *Id.*
[63] *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995).
[64] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).
[65] *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).
[66] *Anderson,* 483 U.S. at 640.
[67] *Malley*, 475 U.S. at 341.
[68] *Anderson*, 483 U.S. at 639.
[69] *Id.*
[70] *McCloud v. Testa*, 97 F.3d 1536, 1541 (6th Cir. 1996).

All this undisputed evidence shows the following:

- Vilkas is a government official who was performing a discretionary function—inspection, condemnation, and demolition of a building;
- There is no allegation that any other building officials disagreed whether Vilkas' actions violated Davet's rights;
- There was no mistaken or unlawful conduct by Vilkas.

Under these circumstances, Vilkas is entitled to qualified immunity, and this Court should grant his motion for summary judgment.

B.    **State Constitutional Issues**

1.    **No cause of action for violation of the Ohio Constitution**

After *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*[71] recognized a limited implied cause of action arising under the federal constitution, a number of states considered whether there is an implied cause of action against state and local government officials for violation of state constitutions.[72]  *Ohio is not among the states that recognize this cause of action.*

In *Provens v. Stark County Bd. of Mental Retardation & Developmental Disabilities,* Provens alleged that the defendant board had violated her rights under the Ohio Constitution by harassing, discriminating against, and disciplining her because she had criticized the board's practices and filed discrimination charges against the board with the Ohio Civil Rights Commission and the Equal Opportunity Commission.[73]  After holding that there was no cause of action for violation of Provens' free-speech rights under the Ohio Constitution, the court stated that "no other constitutional provision relied upon by the appellant provides an individual cause of action for an alleged violation of such constitutional right."[74]

Similarly, in *Chalker v. Howland Township Board of Trustees,* a property owner and a mortgage holder filed an action against a township board of trustees after the township demolished the plaintiffs' buildings to abate a nuisance.[75]  The plaintiffs alleged tort claims, a claim under 42 U.S.C. § 1983, and claims based on Article I, Sections 1, 14, and 19 of the Ohio Constitution.  In granting the township summary judgment on the claims under the Ohio Constitution, the trial

---

[71] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

[72] *See* Sharon N. Humble, Annotation, *Implied Cause of Action for Damages for Violation of Provisions of State Constitutions,* 75 A.L.R.5th 619 (2000).

[73] *Provens v. Stark County Bd. of Mental Retardation & Developmental Disabilities,* 64 Ohio St.3d 252, 253 (1992).

[74] *Id.* at 255.

[75] *Chalker v. Howland Township Board of Trustees,* 74 Ohio Misc.2d 5 (1995).

court recognized that "[t]he Ohio Supreme Court has repeatedly held that the protections offered under the Ohio Constitution are not self-executing . . . Absent precedent in this regard, this court will not infer that such causes of action exist."[76]

Here, as in *Provens* and *Chalker*, Davet alleges violations of the Ohio Constitution: Substantive due process in paragraphs 23 and 30; procedural due process in paragraphs 24 and 30; equal protection in paragraphs 25 and 31; and taking without just compensation in paragraph 27.  None of these claims for alleged violations of the Ohio Constitution states a cause of action.  The City and Vilkas are, therefore, entitled to summary judgment on all claims for alleged violations of the Ohio Constitution.

2.    Defenses

      a.    Immunity Under R.C. Chap. 2744

            i.    City's Immunity

The Political Subdivision Tort Liability Act, R.C. Chap. 2744, creates a comprehensive statutory scheme defining when Ohio political subdivisions may be liable in tort actions and when they are immune.  The City of Cleveland is a political subdivision as defined by R.C. § 2744.01(F).[77]  R.C. § 2744.02 provides that municipalities are not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision in connection with a governmental function unless one of the exceptions listed in R.C. § 2744.02(B) applies.

In any action against a political subdivision, the initial question of immunity is a legal issue to be resolved by the court prior to trial, either by a motion to dismiss or by summary judgment.[78]  Courts use a three-prong analysis for

---

[76] *Id.* at 22.

[77] Am. Compl. at ¶ 2; Plaintiff's Admissions in Reply To Def's Counterclaim at ¶ 1.

[78] *Goad v. Cuyahoga Bd. Of Comm.*, 79 Ohio App.3d 521, 524 (8th Dist. 1992).

determining immunity under Chapter 2744:

- First, the City's acts must fall within the general rule of immunity in R.C. § 2744.02(A).
- Second, Davet may defeat this immunity by showing that one of the exceptions in R.C. § 2744.02(B)(1)-(5) applies.
- Third, if one of these exceptions to immunity applies, immunity can still be reinstated if § 2744.03 applies.[79]

The Ohio Revised Code defines "governmental function" as including, but not limited to, building, zoning, sanitation, fire, plumbing, and electrical-code inspections and actions taken in connection with these codes.[80]  Courts have interpreted this section to include the demolition of a building as a governmental function.[81]

In *Cleveland v. Wescon Construction Corp.*, Wescon—the plaintiff—brought a claim against Cleveland for alleged willful, malicious demolition.[82]  Cleveland filed a motion for summary judgment on the grounds that the demolition claim was barred by R.C. Chap. 2744.  The trial court granted the motion, and the court of appeals affirmed because Wescon's claim "sounds in tort, i.e., trespass and malicious demolition resulting from alleged insufficient notice."[83]

Wescon attempted to argue that R.C. Chap. 2744 did not apply to its claim under the exception in R.C. § 2744.09(E).  This section exempts Chap. 2744 from applying to "[c]ivil claims based upon alleged violations of the constitution or statutes of the United States . . . ."  The court held that R.C. § 2744.09(E) did not, however, apply because Wescon never identified the constitutional rights that were allegedly violated.[84]

As in *Wescon*, plaintiffs often try to avoid immunity under R.C. Chap. 2744 by trying to dress up a wrongful-demolition claim as an alleged federal-constitutional violation.  In *Bram v. City of Cleveland*, the owner of a commercial building filed a claim against the Cleveland and a contractor for wrongful demolition and due-process violations.[85]  Cleveland filed a motion for summary judgment based on statutory immunity, and the trial court granted the motion.  The court of appeals affirmed the decision stating "[i]f this court allowed appellant (Bram) to avoid the political subdivision tort immunity provisions by asserting the general proposition that the city violated his due process rights, we would

---

[79] *Cater v. City of Cleveland*, 83 Ohio St.3d 24, 28 (1998).

[80] R.C. § 2744.01(c)(2)(p).

[81] *Bram v. City of Cleveland*, 97 Ohio App.3d 719, 720-721 (8th Dist. 1993).

[82] *Cleveland v. Wescon Constr. Corp.*, No. 57405, 1990 WL 121301 (8th Dist. Aug. 23, 1990) (copy attached as Appendix E).

[83] *Id.* at 2.

[84] *Id.* at 1.

[85] *Bram*, 97 Ohio App.3d at 719.

essentially be subverting the purpose of the legislation."[86]

Here, Davet is attempting to avoid statutory immunity just as Wescon and Bram tried. His wrongful-demolition claim sounds in tort—for which the City has immunity—rather than as a violation of his rights under the federal constitution. For this reason, R.C. § 2744.09(E) does not apply to this case.

Because R.C. § 2744.09(E) does not provide an exemption for Davet, the standard analysis for statutory immunity applies. On March 6, 2003, the City inspected the Property and condemned the structure. This was a government function. Furthermore, demolishing the building at the property on March 14, 2003 and June 11, 2003 were governmental functions. Since these are governmental functions for which the City has immunity, Davet can only overcome the City's immunity by demonstrating that one of the five exceptions in R.C. § 2744.02(A) applies. These exceptions are as follows:

- Negligent operation of a motor vehicle;
- Negligent conduct of employees while carrying out a *proprietary* (rather than a governmental) function;
- Failure to keep roads and sidewalks free from nuisance;
- Negligently caused injury or loss occurring on the grounds of certain government properties; and
- Any other situation in which liability is expressly imposed by the Revised Code.[87]

No exception to immunity applies even by viewing the facts most favorably to Davet. Davet does not allege in the Amended Complaint that the City's actions are subject to one of the five exceptions to statutory immunity under Ohio Revised Code § 2744.02(A), and none of the evidence in this matter establishes that any of these exceptions in fact applies. Having failed to do so, this Court should grant summary judgment to the City because it is immune from liability under R.C. § 2744.02(A)(1).

ii. **Vilkas' Immunity**

Under R.C. § 2744.03(A)(6), a public employee is immune from liability unless one of the following applies:

(a) The employee's acts or omissions were manifestly outside the scope of employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Liability is expressly imposed upon the employee by a section of the Ohio Revised Code.

The evidence in this case establishes that a condemnation notice was issued for the Property under C.C.O. §

---

[86] *Id.* at 721.
[87] R.C. § 2744.02(B).

3103.09, that Davet failed to comply with the Notice, and that Vilkas completed his official responsibilities by ordering the building's demolition.  These acts are not manifestly outside the scope of Vilkas' employment—they are acts that integral to his official duties with Building and Housing.  And Vilkas' adherence to the process set forth in the Cleveland Codified Ordinances negates Davet's allegation that Vilkas' actions were malicious, in bad faith, or undertaken in a wanton or reckless manner.  Finally, Davet does not allege that any statute imposes personal liability on Vilkas.

All Davet's allegations show that Vilkas was acting within the course and scope of his employment with the City at all relevant times.  Accordingly, this Court should grant summary judgment for Vilkas because he is immune under R.C. § 2744.03(A)(6).

> **b.**     **Failure To Exhaust Administrative Appeals**

"It is a well-established principle of Ohio law that, prior to seeking court action in an administrative matter, the party must exhaust the available avenues of administrative relief through administrative appeal."[88]  Once a party raises the defense of the doctrine requiring exhaustion of administrative appeals, it is the duty of the party asserting the defense to argue the defense.[89]

In this case, Davet failed to exhaust his administrative appeals.  He filed an appeal with the BBS on March 10, 2003.[90]  BBS heard the appeal on April 23, 2003.[91]  On May 7, 2003, BBS adopted a resolution finding that the violation notice issued to Davet for 810-12 E. 152nd Street, Cleveland, Ohio was valid.[92]  This resolution notified Davet that he had the right to appeal the decision to the Ohio Board of Appeals and to the Court of Common Pleas.[93]  Davet did not appeal the adverse BBS decision.[94]

Once BBS adopted its resolution, Davet could have appealed to the Ohio Board of Appeals under R.C. § 3781.19 or to the court of common pleas under R.C. § 3781.031 or R.C. Chap. 2506.  Chapter 2506 provides a remedy by judicial review for final orders of municipal administrative boards.  Davet had an adequate remedy at law.  He failed, however, to bring these appeals.

---

[88] *Noernberg v. City of Brook Park*, 63 Ohio St.2d 26, 29 (1980).
[89] *Jones v. Village of Chagrin Falls*, 77 Ohio St.3d 456, 462 (1997).
[90] Davet Appeal attached as Ex. 4.
[91] BBS Resolution for Docket A-35-03 attached as Ex. 8.
[92] *Id.*
[93] *Id.*
[94] Affidavit of Antoinette Cobb attached as Ex. 18.

Two exceptions apply to the general rule where failure to exhaust administrative remedies is not required:

- There is no administrative remedy available that can provide the relief sought or resort to administrative remedies would be wholly futile; and,
- The available remedy is onerous or unusually expensive.[95]

Neither of these exceptions applies here.  Davet had an administrative remedy.  Had he appealed the BBS decision, the court of common pleas could have issued a stay to prohibit the City from demolishing the building at the Property.  An appeal, therefore, would not have been "futile."  Lastly, this remedy is neither onerous nor unusually expensive.  It is a well-established appeal process that requires a standard appeal fee.  Since neither exception applies, Davet was required to exhaust his administrative appeals.  His failure to do so demands summary judgment in the City and Vilkas' favor.

C.      **Injunctive Relief**

Davet asks this Court for equitable relief to enjoin further demolition at the Property.  But his request must be denied because he is barred by the doctrines of *res judicata* and unclean hands.

1.      *Res Judicata*

"Absent an appeal to the court of common pleas, the board's decision becomes a final judgment on the merits, erroneous or not, and is *res judicata* to identical future applications."[96]  In *Cleveland v. Sun Oil Co.*, the Cleveland Board of Zoning Appeals approved a construction permit without limiting Sun Oil's hours of operation, and the City did not appeal.  Cleveland then brought an action for a temporary restraining order restricting Sun Oil from operating between midnight and 6:00 a.m.

The Cleveland Municipal Court, Housing Division, granted the restraining order and later the temporary and permanent injunctions.  The court of appeals vacated the injunction, holding that the doctrine of administrative *res judicata* prevented Cleveland from collaterally attacking the Board of Zoning Appeals' unchallenged final order.  It did not matter whether the board's decision was erroneous—the proper remedy was to appeal the decision under R.C. Chap. 2506.[97]

Similarly, the proper course for Davet to challenge the BBS decision would have been for him to appeal that

---

[95] *BP Communications Alaska, Inc. v. Central Collection Agency*, 136 Ohio App.3d 807, 813 (8th Dist. 2000).

[96] *City of Cleveland v. Sun Oil Co.*, 62 Ohio App.3d 732, 736 (1989).

[97] *Id.* at 736.

decision to the Court of Common Pleas. As discussed above, Davet did not appeal this decision. His failure to pursue the appeal makes the BZA's decision *res judicata*. For this reason, this Court should grant the City and Vilkas' motion for summary judgment.

### 2. Unclean Hands

Davet's demand for injunctive relief to prevent further demolition at the Property is barred by the unclean hands doctrine. Under this doctrine, a plaintiff's unclean hands will bar equitable relief to that plaintiff who is "tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant."[98] A defendant raising the unclean hands defense bears the burden to prove that the plaintiff has unclean hands by clear, unequivocal, and convincing evidence.[99] Unclean hands by a plaintiff bars equitable relief if the bad faith or unconscionable conduct relates to the subject matter of the action and is directed at the defendant.[100]

In this case, Davet's request for injunction relief to prohibit continued demolition is barred by the doctrine of unclean hands because he acted in bad faith. Davet knew that the roof at the Property had partially collapsed in the fall of 2002.[101] He failed to repair the roof—allowing rain, snow, and ice to enter the building through the hole—for over six months. He did not apply for or receive any permits to repair the building, and he did not hire an engineer, architect, or contractor to begin to rehabilitate the building.

The City continued to make good-faith efforts to work with Davet after the BBS hearing. There was regular correspondence between the City's attorney and Davet's for over a month where the City outlined the steps that Davet needed to take to avoid further demolition. Davet failed to comply with these steps.

The City razed the front portion of the building back to the firewall in the center of the building on June 11, 2003.[102] At no time in the three months from when the Condemnation Notice was issued on March 7, 2003—or in the nine months since the roof collapsed—did Davet obtain permits to correct any of the code violations at the Property.[103]

---

[98] *Big Lots Stores v. Jaredco, Inc.*, 182 F.Supp.2d 644, 652 (S.D. Ohio 2002).
[99] *Id.* (citing *Kearney & Trecker Corp. v. Cincinnati Milacron Inc.*, 562 F.2d 365, 371 (6th Cir. 1977).).
[100] *Pierce v. Apple Valley, Inc.*, 597 F.Supp.1480 (S.D. Ohio 1984).
[101] BBS Tr. dated April 23, 2003 at 10-11 attached as Ex. 1.
[102] Damian Borkowski Aff. attached as Ex. 7.
[103] Antoinette Allen Aff. attached as Ex. 17.

Davet did not even apply for the required permits.[104]  Davet's complete refusal to take concrete steps toward repairing his building demonstrates his bad faith in this matter.  The subject matter of his request—to stop further demolition of his building—is the subject matter of the action and is directed at the defendants.  His unclean hands should bar his request for injunctive relief from this Court.

## IV.    CONCLUSION

For all the above reasons, the City and Vilkas are entitled to summary judgment against Davet on all counts of his Amended Complaint.

Respectfully submitted,

SUBODH CHANDRA (0069233)
Director of Law

By:     /s/ Ronald J. H. O'Leary
RONALD J. H. O'LEARY (0068207)
Chief Assistant Director of Law
601 Lakeside Avenue, Suite 15
Cleveland, Ohio 44114
(216) 664-3572
(216) 420-8291 (fax)
roleary@city.cleveland.oh.us

Attorneys for Defendants

---

[104] *Id.*