# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **RICHARD DAVET,** | ) CASE NO. 1:03CV1623 |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) Judge John M. Manos |
| | ) |
| **CITY OF CLEVELAND** | ) |
| **ROBERT VILKAS,** | ) |
| | ) |
| **Defendants.** | ) **MEMORANDUM OF OPINION** |

On March 12, 2003, Richard Davet ("Plaintiff") filed the above-captioned case in the Cuyahoga County Court of Common Pleas seeking preliminary and permanent injunctive relief. Specifically, the Plaintiff sought to enjoin the City of Cleveland (the "City") from demolishing his real property located at 810-812 E. 152nd Street, Cleveland, Ohio. On April 1, 2003, the City filed an answer and counterclaim seeking reimbursement for demolition costs associated with Plaintiff's property.

On July 3, 2003, Plaintiff filed an amended complaint against the City, Cleveland Building Official Robert Vilkas, and independent demolition contractor Baumann Enterprises,[1] (collectively, "Defendants") for permanent injunctive relief and monetary damages. As amended, the complaint raised various due process, equal protection, and § 1983 claims. On July 31, 2003, Defendants invoked this Court's jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) and sought removal pursuant to 28 U.S.C. § 1441. (Docket No. 1.)

On November 3, 2003, the City amended its counterclaim to include additional demolition costs incurred during a second phase of demolition. (Docket Nos. 19 & 28.) On November 18, 2003, Plaintiff filed an answer. (Docket No. 32.)

On September 14, 2004, the City filed a motion for summary judgment on its counterclaim. (Docket No. 54.) On January 31, 2005, Plaintiff filed a brief in opposition. (Docket No. 61.) Finally, on February 14, 2005, the City filed a response. (Docket No. 62.) The sole matter before the Court is the City's motion for summary judgment on its counterclaim.[2] The parties have fully briefed the issues and the motion is ripe for disposition. For the following reasons, the motion is **GRANTED**.

## I. BACKGROUND

Plaintiff owns real property located at 810-812 East 152nd Street in Cleveland, Ohio. He has owned this property for approximately 30 years and uses the building situated thereon primarily as

---

[1] On September 8, 2003, Defendant Baumann Enterprises was voluntarily dismissed. (Docket No. 14.)

[2] On March 4, 2004, the Court granted Defendants' Motion for Summary Judgment and dismissed, with prejudice, the amended complaint as against all Defendants. (Docket No. 43.)

storage space for equipment used in connection with a jewelry business.

On March 6, 2003, the City inspected the building located on Plaintiff's real property. The inspection identified numerous Building Code violations, including a partially collapsed roof and large cracks on both sides of the opposing sidewalls that acted to hold the front face of the building to the structure. Based on these violations, the City issued a condemnation notice to Plaintiff dated March 6, 2003.

The notice identified the Code violations, informed Plaintiff of his right to appeal the condemnation order, identified a date of March 7, 2003, by which the violations were to be brought into compliance with the Building Code, and detailed the ramifications of noncompliance therewith, including demolition of the structure. Plaintiff found the notice affixed to the front of the building on March 10, 2003, and filed an appeal with the Board of Building Standards and Appeals (the "Board"). The appeal served to stay the demolition. See Cleveland Codified Ordinance Section 3103.20(e)(3). However, because the City perceived the present condition of the building as presenting an immediate danger to life and/or property, it filed a certification with the Board to lift the automatic stay and expedite the demolition.

On March 12, 2003, Plaintiff filed the instant action in Cuyahoga County Court of Common Pleas. The court granted a TRO for one (1) day and set a preliminary injunction hearing for March 13, 2003. On March 13, 2003, Plaintiff withdrew his request for preliminary injunction and the TRO was canceled. On March 14, 2003, the City partially demolished the front of the building so to remove the immediate danger that the wall may collapse onto the sidewalk and street.

On April 23, 2003, the Board heard Plaintiff's appeal with respect to the condemnation order and notice issued by the City.  On May 7, 2003, the Board adopted a resolution upholding the condemnation notice.  The resolution effectively confirmed that the structure at issue was in violation of the Building Code, presented a danger to the community, and was properly condemned.  Furthermore, the resolution provided notice to Plaintiff of his right to appeal the Board's determination to the Ohio Board of Appeals or directly to the Court of Common Pleas within thirty (30) days. (Defendant's Ex. 6, at 1-2.)  Plaintiff did not appeal.

On June 4, 2003, the City sent Plaintiff a letter indicating that demolition would resume on June 9, 2003.  On June 6, 2003, Plaintiff filed another TRO motion seeking to restrain the City from continuing with its demolition.  The common pleas court held a hearing on that same date and denied the motion.  On June 11, 2003, the City proceeded with demolition and razed the front portion of the building back to a firewall located in the middle of the structure.

On September 14, 2004, the City filed a Motion for Summary Judgment on its Counterclaim seeking reimbursement for the demolition costs and injunctive relief ordering the Plaintiff to either rehabilitate the structure or demolish it completely.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party moving for summary judgment has the initial burden to either (1) present affirmative evidence negating an element of the non-movant's claim or (2) demonstrate "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once that burden is met, the non-movant must set forth sufficient evidence to create a genuine issue of material fact. Klepper v. First Am. Bank, 916 F.2d 337, 342 (6th Cir. 1990). To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

All reasonable factual inferences must be drawn in favor of the non-movant. Humenny v. Genex Corp., 390 F.3d 901, 904 (6th Cir. 2004) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, "the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Indeed, "[a] mere scintilla of evidence is insufficient; rather there must be evidence on which the jury could reasonably find for the non-movant." Humenny, 390 F.3d at 904 (internal quotation omitted).

### III. LAW AND ANALYSIS

#### A. Supplemental Jurisdiction

As a preliminary matter, Plaintiff requests that the Court decline to exercise supplemental jurisdiction over the counterclaim and remand the instant matter back to the Cuyahoga County Court of Common Pleas. Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim if:

>    (1) the claim raises a novel or complex issue of state law;
>    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
>    (3) the district court has dismissed all claims over which it has original jurisdiction; or
>    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The choice to decline supplemental jurisdiction is left to the sound discretion of the district court. Musson Theatrical v. Federal Express Corp., 89 F.3d 1244, 1254 (6th Cir. 1996). In exercising this discretion, the Sixth Circuit has instructed district courts to consider the issues of judicial economy, convenience, fairness, and comity. Id. Although the general rule is that state claims should be remanded back to state court when all federal claims have been dismissed, that rule is not absolute. Id.; Blakely v. United States, 276 F.3d 853, 863 (6th Cir. 2002). Indeed, remand is inappropriate if it would cause an undue amount of wasted time and effort. See Hankins v. The Gap, Inc., 84 F.3d 797, 803 (6th Cir. 1996).

Here, this case has been on the Court's docket for almost two years. On May 21, 2004, after granting the Defendants' motion for summary judgment on the amended complaint, the Court held a status conference regarding the counterclaim and gave the Plaintiff ninety days to rehabilitate the structure located on his real property. (Docket No. 48.) On September 15, 2004, the Court granted him an additional forty-five day continuance. (Docket No. 56.) On December 16, 2004, the Court held another status conference and granted the Plaintiff an additional forty-five days so that his newly-retained counsel could respond to the motion for summary judgment on the counterclaim. (Docket No. 59.) To date, the Plaintiff has not rehabilitated the structure and now, for the first time, is requesting the Court to remand this matter back to state court. Given these facts, the Court does not see how the

issues of judicial economy, convenience, fairness, and comity could weigh in the Plaintiff's favor. Thus, the Court concludes that remanding the matter back to state court would only cause an undue amount of wasted time and effort, especially given that the counterclaim does not raise any novel or complex issues of state law. See Hankins, 84 F.3d at 803.

### B. Demolition Costs

The City is seeking reimbursement costs for the partial demolitions that occurred on March 14 and June 11 of 2003. In sum, the total cost of the demolitions, including an initial environmental assessment and monitoring is $17,380.00. (Defendant's Ex. 5.) Plaintiff counters that the City is not entitled to any damages because a question still exists as to whether the City had a right to demolish the structure at all.

Cleveland Codified Ordinance Section 3103.09(j)(1) states:

> Any and all expenses or costs incurred under this section for the removal, repair, alteration, securing or boarding of a building or structure shall be paid by the owner of such building or structure, except when such expenses or costs are incurred with respect to a government or school building owned by a governmental entity or political subdivision and are funded by federal money.

The purpose of C.C.O. § 3103.09 was to provide a procedural mechanism for dealing with unsafe buildings and structures that pose a threat to public health and safety. Under the Ordinance, the Commissioner of Building and Housing is authorized to declare an unsafe structure to be a public nuisance and order its immediate repair and/or demolishing. C.C.O. § 3103.09(d). Upon such a determination, the Commissioner is required to notify the owner of the structure and provide the owner with an opportunity to repair the structure. C.C.O. § 3103.09(e). The owner has a right to appeal. C.C.O. § 3103.09(g). "In the absence of an appeal, all actions taken pursuant thereto shall constitute a

-7-

valid exercise of the police powers of the City of Cleveland." Id. If the owner does not rehabilitate the structure, the Commissioner is authorized to proceed with demolition and/or removal of the structure. C.C.O. § 3103.09(h). Demolition may proceed without notice to the owner if the Commissioner determines that the structure poses an immediate danger to human life and health. C.C.O. § 3103.09(i). Again, any and all costs incurred by the City for such demolition and removal shall be paid by the owner of the structure. C.C.O. § 3103.09(j).

The City demolished the Plaintiff's building pursuant to the emergency-demolition procedure outlined in C.C.O. § 3103.09(i). Given the clear mandate of C.C.O. § 3103.09(j), the Plaintiff is liable for "any and all expenses or costs incurred under this section for the removal, repair, alteration, securing or boarding of a building." Plaintiff counters that "there is a factual dispute concerning whether the building actually constituted an imminent or immediate hazard prior to the City's demolition." (Docket No. 61, at 2.) However, the Court has already held:

> The finding by the Cleveland Board of Building Standards and Appeals that Plaintiff's building constituted a danger to the public for which condemnation was appropriate is an established legal fact that was not appealed. As an unreviewed final decision of a state administrative body, therefore, this Court must give the Board's finding preclusive effect. See University of Tenn. v. Elliot, 478 U.S. 788 (1986).

(Docket No. 43, at 11.) Accordingly, because Plaintiff never appealed the condemnation order, there is no factual dispute concerning whether Plaintiff's building constituted an imminent and immediate hazard. Thus, demolition was appropriate and C.C.O. § 3103.09(j) mandates that Plaintiff reimburse the City for all costs incurred.[3]

---

[3] Plaintiff cites to O.R.C. § 715.261(B) and C.C.O. § 3103.09(j)(3) to argue that the City should first secure a lien on the property and recover its costs through a tax lien.

-8-

Plaintiff argues that even if he is found liable, the City has not provided sufficient evidence to establish that the costs incurred were fair, reasonable, and necessary. However, under C.C.O. § 3103.09(j), the Plaintiff is liable for "any and all expenses or costs incurred." There is no additional burden that the City also plead and prove that the costs incurred were fair.[4]

### C. Injunctive Relief

The City also argues that because the remaining structure is still unsafe and presents a hazard to the public, the Court should order the Plaintiff "to comply with the Condemnation Notice by demolishing the structure at the Property by a date certain." (Docket No. 54, at 6.) Plaintiff counters that the remaining structure does not constitute a threat to public safety.

Again, the Court has already held that the condemnation order, having not been appealed, is appropriate and thus, the question of whether the remaining structure continues to pose a theat to public health and safety "cannot now be litigated before this Court." (Docket No. 43, at 10.) The City has a right to enforce the condemnation order until all building code violations are abated. Thus, the only remaining question before the Court is whether the City is entitled to injunctive relief ordering the

---

However, O.R.C. § 715.261(B) clearly reserves the right for a municipality to commence a civil action to recover the total cost from the owner. Moreover, C.C.O. § 3103.03(j)(3) clearly delineates a tax lien only as an alternative remedy "[i]f the owner fails to pay for the costs of removal, repair, alteration, securing or boarding or of inspections of violations." Thus, the City is well within its right to seek money damages. See Cleveland v. W. E. Davis Co., 1996 Ohio App. LEXIS 3103, *13-15 (8th App. Dist, July 18, 1996).

[4] Plaintiff also argues that the City has not sufficiently proven that the cost of the demolitions, assessment, and monitoring amounted to $17,380.00. However, the City has since sent Plaintiff a copy of all invoices and the Plaintiff no longer disputes the amount.

Plaintiff to rehabilitate or demolish the structure.

> Cleveland Codified Ordinance § 3103.11 states in pertinent part:
>
> Whenever any person ... fails, neglects or refuses to comply with a notice to repair, rehabilitate or demolish a building or other structure declared unsafe under the provisions of Section 3103.09 ... the Commissioner or any other administrative officer having jurisdiction may ... institute an appropriate action at law or in equity to restrain the execution of work in violation of this Building Code, to compel the removal of work executed in violation of this Building Code, and to prevent the occupation or use of such building or other structure.

C.C.O. § 3103.11 clearly authorizes the Commissioner to seek injunctive relief to correct a Building Code violation. Moreover, O.R.C. § 715.30 states that a municipality, "in addition to other remedies provided by law, may institute a suit for injunction to prevent or terminate such violation." Thus, C.C.O. § 3103.11, read in conjunction with O.R.C. § 715.30, obviates the need to show that no remedy at law is available in order to seek injunctive relief. See Cleveland v. 8409 Euclid Avenue, Inc., 1984 WL 4505 (8th App. Dist., March 2, 1984).

C.C.O § 3103.09(c) requires that prior to rehabilitating a condemned structure, an owner needs to obtain a permit. Plaintiff has not sought a building permit. Indeed, the structure has remained unchanged since May 21, 2004 when the Court gave the Plaintiff 90 days to rehabilitate the structure. (Defendant's Ex. 7.) Accordingly, the Court grants the request for injunctive relief ordering the Plaintiff to rehabilitate or demolish the structure within sixty (60) days of this Order.

## IV. CONCLUSION

Defendants are entitled to summary judgment on the claims as discussed above. Even when construed in a light most favorable to the Plaintiff, the record before the Court establishes no genuine issues of material fact, and dictates that the Defendants are entitled to judgment as a matter of law. For

the foregoing reasons, Defendants' Motion For Summary Judgment is **GRANTED**, each party to bear its own costs.

**IT IS SO ORDERED.**

**Date: May 24, 2005**                    */s/ John M. Manos*
                                           **UNITED STATES DISTRICT JUDGE**